No. 96-097

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

DANIEL J. ELLIS,

     Respondent and Appellant,

v.

MILDRED A. ELLIS,

     Petitioner and Respondent.

FILED

AUG 22 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane Barz, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Gerald J. Neely, Billings, Montana

     For Respondent:

          Joanne M. Briese, Billings, Montana

FILED

Filed:   AUG 22 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  May 3, 1996

Decided:  August 22, 1996

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Appellant, Daniel J. Ellis (Daniel), appeals from the Findings of Fact and Conclusions of Law entered on September 21, 1995, by the Thirteenth Judicial District Court of Yellowstone County, awarding his former wife, Mildred A. Ellis, permanent maintenance.

We affirm.

The sole issue raised by Daniel is whether the District Court's decision to award permanent maintenance was based on substantial evidence.

## FACTS

Daniel and Mildred were married in 1977. There are no minor children of the marriage. At the time of trial, Mildred was 47 years old and in good health except for a chronic back problem which precludes her from standing for long periods. For the past 8 years, Mildred has worked for Herberger's Department Store. In 1994 Mildred earned $13,761.98. Daniel has been a federal meat inspector for the past 23 years for the United States Department of Agriculture. He earned $39,194.21 in 1994. In addition, Daniel traditionally receives a pay raise after the first of the year and also receives overtime pay..

Mildred testified that her monthly living expenses total $1,463.50. This amount includes payment on debts incurred as of 1995 totalling $7,846.06. Mildred testified that her estimated monthly expenses exceed her net monthly income by $581.90. Mildred testified that she would be unable to find additional work to supplement her current income because her employer does not allow

2

its employees to work for its competitors. Outside of a retail position, Mildred testified that it would be difficult for her to coordinate the hours of an additional job.

In an affidavit supplied prior to trial, Daniel listed his gross pay as $2,697.60 per month. In addition to state and federal taxes, Daniel listed several other itemized deductions to his paycheck. Daniel stated that his personal expenses were $2,111.42 per month.

Although Daniel was not present at the June 1995 hearing, he offered testimony through deposition and was represented by counsel during the proceedings. After the hearing, the District Court dissolved the marriage and distributed the marital assets. The court determined Mildred was eligible for maintenance and awarded her $500.00 per month from the date of entry of the decree until she dies or remarries.

Daniel appeals.

## STANDARD OF REVIEW

This Court will not reverse the district court's award of maintenance unless the court's findings are clearly erroneous. In re Marriage of Davies (1994), 266 Mont. 466, 478, 880 P.2d 1368, 1376; In re Marriage of Smith (1995), 270 Mont. 263, 269, 891 P.2d 522, 526.

When determining whether a district court's findings are clearly erroneous, this Court has adopted a three-part test. In re Marriage of Eschenbacher (1992), 253 Mont. 139, 142, 831 P.2d 1353, 1355.

First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence, we will determine if the trial court has misapprehended the effect of the evidence. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended the Court may still find that a finding is clearly erroneous when, although the evidence is there to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed. (citations omitted).

Eschenbacher, 831 P.2d at 1355 (citing Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287).

### DISCUSSION

On appeal, Daniel argues there was not substantial evidence to support the District Court's decision to award Mildred maintenance. First, he contends that Mildred is not entitled to maintenance. Second, he contends that he is financially unable to pay the amount ordered by the District Court.

When determining whether to award maintenance, the court must initially determine if the spouse requesting maintenance is eligible. In making this determination, the district court must consider the statutory provisions of § 40-4-203, MCA, which read in part as follows:

> **40-4-203. Maintenance.** (1) In a proceeding for dissolution of marriage . . . the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:
> (a) lacks sufficient property to provide for his [or her] reasonable needs; and
> (b) is unable to support himself [or herself] through appropriate employment . . . .

In Daniel's first argument, he contends that Mildred will only be short on monthly funds until such a time as she pays off her

4

existing debts. After paying her debts, Mildred's monthly expenses will be reduced to $1,176.50. Furthermore, Daniel argues that the court improperly considered debts incurred by Mildred following the separation of the parties. Daniel asserts that $4,399.41 of Mildred's current debt was payment for a wedding for her son from a previous marriage. This leaves only $3,476.65 attributable to Mildred's living expenses. In addition, Daniel asserts the $3,000.00 loan from her other son should not be considered for the purpose of determining maintenance because the loan has no specific due date, repayment schedule, or applicable interest.

To award maintenance the court must find the eligible spouse lacks sufficient property to support him or herself and is unable to support him or herself through appropriate employment. Here, Daniel is not contesting the fact that Mildred lacks sufficient property to support herself. Daniel argues that if the court would have properly considered the duration of Mildred's existing debts, Mildred would be able to support herself. Thus, her situation would not satisfy this second prong of the statute. It is Daniel's position that the disputed personal loans add $159.00 per month to Mildred's living expenses, "which when that amount is added to her $153.17 per month deficient [sic] found by the Court, Respondent Wife is able to provide for herself." Contrary to this assertion, however, no where in the court's findings or conclusions is there a reference to Mildred's $153.17 deficit. Here, the court, after considering Mildred's tax obligations, found Mildred's net income was $881.60 per month. The court then found Mildred's monthly

5

living expenses to be $1,463.50. This leaves Mildred $581.90 short every month. Even if the court had chosen not to consider amounts Mildred is currently spending to discharge her debts, including the $159.00 in payments disputed by Daniel, Mildred's income still falls short of her monthly expenses.

Upon review of the record, the evidence supports a finding that Mildred both lacks sufficient property to provide for her needs and that she would be unable to support herself through employment. Therefore, the District Court was not clearly erroneous in determining that Mildred is eligible for maintenance.

Next, after determining that a spouse is eligible for maintenance, the trial court must then engage in an analysis to determine the amount and duration of maintenance pursuant to § 40-4-203(2). On appeal, Daniel's second argument is that the District Court erred in failing to consider his ability to pay the ordered maintenance. Daniel asserts that he is already $18.12 short per month, and therefore he would be unable to pay maintenance awarded by the court.

Under the statute, Daniel's ability to pay is only one of the several relevant factors that a court will consider in determining an award of maintenance. The applicable statute reads in part as follows:

> (2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant facts including:
> (a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of

6

a child living with the party includes a sum for that party as custodian;

(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) the standard of living established during the marriage;

(d) the duration of the marriage;

(e) the age and the physical and emotional condition of the spouse seeking maintenance; and

(f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

Section 40-4-203(2), MCA.

Here, the court addressed many of the above listed criteria in its findings. The court considered Mildred's limited financial resources, finding that she had no income producing property. The court also considered Mildred's prospects for future employment. But, the court determined that even with retraining or additional education, Mildred would face the prospect of taking on a large student loan debt only to enter the job market after she was 50 years old. In addition, the court noted that Mildred's standard of living had diminished since the separation.

The court also considered Daniel's ability to afford maintenance for Mildred. The court found that Daniel's monthly expenses were approximately $948.00 with an additional $286.41 for a car payment. After expenses, the court determined that Daniel had an excess monthly income of $1,133.02. From this, the court determined that Daniel was financially able to pay $500 per month as permanent maintenance to Mildred.

Daniel asserts that the court was incorrect. He argues that his net pay is closer to $2,093 per month. He further asserts that

7

his monthly expenses are far more than the court's estimate, averaging $2,111.42 per month.

The disparity between Daniel's numbers and the court's numbers is explained in part by way of other court findings. In Daniel's estimation of his monthly expenses, he includes substantial payments he is making on various credit cards. But, as the District Court found and as Daniel does not dispute, he charges all of his travel expenses as a meat inspector on his credit cards and is subsequently reimbursed by his employer. On appeal, Daniel extends this argument and asserts that the court is implicitly finding that his travel reimbursements exceed his credit payments, and that the court is imputing to him non-existent income in its determination. This assertion misses the point. Debts incurred in the course and scope of Daniel's employment which are then subsequently assumed by his employer cannot be attributed to him as monthly expenses. Therefore, we conclude that Daniel's assertion that the District Court in some way ignored his ability to meet his own needs and pay maintenance is not supported by the record.

Daniel's ability to pay is only one factor to be taken into consideration. As we have stated before, the ability of the spouse to pay is not a deciding factor in determining the propriety of a maintenance award, "[w]hile it is an element, it is not always the determining factor." In re Marriage of Tahija (1992), 253 Mont. 505, 510, 833 P.2d 1095, 1098. Instead, this Court has held that findings must demonstrate that the court considered the proper factors and that the maintenance award was based on substantial

credible evidence. In re Marriage of Corey (1994), 266 Mont. 304, 309, 880 P.2d 824, 827.

We conclude that the District Court considered the proper factors and its maintenance award was based on substantial credible evidence; the District Court's findings were not clearly erroneous. Therefore, we affirm the court's calculations and award of maintenance.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

9

August 22, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

GERALD J. NEELY
Attorney at Law
P.O. Box 21137
Billings MT  59104-1137

Joanne M. Briese
Attorney at Law
P.O. Box 21328
Billings MT  59104-1328

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy