No. 04-026

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 23

IN THE MATTER OF A.R. and I.R.,

Youths in Need of Care.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and for the County of Park, Cause No. 01-26,
The Honorable Ted Mizner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Suzanne C. Marshall, Marshall Law Firm, P.C., Bozeman, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Jim Wheelis,
Assistant Attorney General, Helena, Montana

Tara DePuy, Park County Attorney; Brett D. Linneweber, Deputy County
Attorney, Livingston, Montana

Submitted on Briefs:  May 4, 2004

Decided:  February 15, 2005

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Julie, the mother of A.R. and I.R., appeals from a Dispositional Order entered November 17, 2003, in the District Court for the Sixth Judicial District, Park County, granting long-term custody of A.R. and I.R. to the Department of Health and Human Services ("Department") and approving a permanency plan.   We affirm.

¶2     We address the following issues on appeal:

¶3     1.  Did the District Court err in finding that A.R. and I.R. were youths in need of care?

¶4     2. Did the District Court exercise independent judgment when it adopted the Department's amended findings of fact and conclusions of law?

## I.  FACTUAL AND PROCEDURAL BACKGROUND

¶5     A.R. and I.R. are twin boys born April 4, 1995.  Prior to these proceedings, the boys lived with their mother, Julie, who was born June 15, 1957.  Dan, the boys' natural father, was born on September 1, 1955.  Julie and Dan were divorced on November 14, 2000.

¶6     Dan and Julie have three other children not subject to these proceedings.

¶7     On December 5, 2001, responding to a referral that Julie was abusing the boys, the Department removed A.R. and I.R. from Julie's home.  On December 7, 2001, the Department filed a petition seeking adjudication that the boys were youths in need of care and requesting temporary legal custody of A.R. and I.R.  The Department alleged that A.R. and I.R. were youths in need of care because Julie psychologically abused them through regular spankings or hitting and verbal and mental abuse; failed to provide them with proper sustenance; failed to care for the youths when one was ill; failed to provide adequate housing

2

by not providing the boys with a bed separate from their mother's; and failed to provide the boys with supervision.

¶8 A temporary legal custody hearing was held on February 1, 2002. At the hearing, the Department presented expert testimony from a psychologist, Dr. Ned Tranel ("Dr. Tranel"), who diagnosed Julie with bipolar disorder, and who concluded the boys showed symptoms of reactive attachment disorder and hypervigilence, at least partially due to the volatile behavior of their mother. The Department also presented testimony from a state social worker, Stacey Jesson ("Jesson"), that the boys said their mother often hit them and screamed at them calling them assholes and idiots. Jesson also testified that I.R. told her he did not get much sleep because the boys slept in the same bed as their mother.

¶9 Julie presented evidence and testimony to rebut these allegations, including copies of the boys' medical records which stated the boys were in good physical health, and testimony from Julie's counselor that she was suffering from Post Traumatic Stress Disorder as a result of her abusive marriage to Dan, rather than bipolarism, and it would be in the best interest of the boys for them to be returned to the care of their mother.

¶10 On February 7, 2002, Julie moved to dismiss. The District Court denied the motion. The parties submitted proposed findings of fact and conclusions of law and the guardian ad litem filed his report and recommendation.

¶11 On March 14, 2002, the District Court filed its Findings of Fact, Conclusions of Law and Order, granting temporary legal custody to the Department and denying Julie's motion to dismiss.

¶12 On May 14, 2002, the District Court filed a Dispositional Order granting temporary

3

custody of A.R. and I.R. to the Department. Julie appealed.

¶13 On December 27, 2002, this Court decided Julie's first appeal in this case, *In re A.R.*, 2002 MT 343N, 313 Mont. 424, 63 P.3d 514. We remanded for specific findings required by § 41-3-437(7)(a), MCA, and affirmed the denial of Julie's motion to dismiss.

¶14 On March 12, 2003, the District Court entered an order amending its findings and conclusions of law. Julie appealed. This Court dismissed the appeal without prejudice. The Department subsequently filed a proposed treatment plan and moved to extend temporary legal custody of the children. After a hearing, the District Court entered an order on November 17, 2003, granting the Department long-term custody of the children and approving the permanency plan. This appeal followed. Additional facts are included as necessary.

## II. STANDARD OF REVIEW

¶15 In a youth in need of care proceeding, we review a district court's findings of fact to determine whether they are clearly erroneous. *In re D.T.H.,* 2001 MT 138, ¶ 7, 305 Mont. 502, ¶ 7, 29 P.3d 1003, ¶ 7. A finding of fact is clearly erroneous if it is not supported by substantial evidence, the court misapprehended the effect of the evidence, or a review of the record leaves us with a definite and firm conviction that the court made a mistake. *D.T.H.,* ¶ 7. We review a district court's conclusions of law to determine whether those conclusions are correct. *D.T.H.,* ¶ 7. When reviewing the adequacy of findings of fact and conclusions of law, this Court examines whether they are sufficiently comprehensive and pertinent to provide a basis for a decision and whether they are supported by substantial evidence. *In re Marriage of Nikolaisen* (1993), 257 Mont 1, 5, 847 P.2d 287, 289.

4

¶16 **Did the District Court err in finding that A.R. and I.R. were youths in need of care?**

¶17 Julie argues that the District Court erred when it found A.R. and I.R. were youths in need of care without making a finding, supported by sufficient evidence and testimony, that Julie had abused or neglected A.R. and I.R.; and without making specific findings with respect to which allegations of the Department's petition had been proved as required by § 41-3-437(7)(a), MCA.

¶18 With regards to her first allegation, Julie argues that other than the testimony of Dr. Tranel, the Department offered no proof that A.R. and I.R. were abused or neglected. Relying on *In re Inquiry into B.S.* (1992), 252 Mont. 435, 829 P.2d 939, Julie argues that hearsay provides an insufficient basis on which to find a child is abused or neglected. Since Dr. Tranel considered hearsay in diagnosing Julie and the boys, Julie argues the District Court had insufficient evidence to conclude A.R. and I.R. are youths in need of care.

¶19 Julie further asserts the District Court erred in not citing specific acts or instances of conduct which resulted in actual harm to the boys' health or welfare. Relying on *In re Inquiry Into J.L.*, 2000 MT 289, 302 Mont. 254, 14 P.3d 473, Julie argues that the District Court could not conclude A.R. and I.R. were youths in need of care unless it found that her actions resulted in "substantial impairment" to the boys' emotional ability to function. According to Julie, since Dr. Tranel admitted Julie's behavior was not the sole cause of the boys' hypervigilence and reactive attachment disorder, the District Court erred in making

its determination that the boys were youths in need of care. We disagree.

¶20 In *In re A.R.*, ¶ 11, this Court held that to sustain its conclusion of abuse and neglect, the District Court was required to make "written findings as to which allegations of the [Department's] petition have been proved or admitted," in accordance with § 41-3-437(7)(a), MCA, and that a finding of abuse and neglect was required for the boys to be classified as youths in need of care.

¶21 At issue here is whether there was sufficient credible evidence to support the District Court's finding that A.R. and I.R. are youths in need of care. A youth in need of care is a youth who has been abused or neglected. Section 41-3-102(29), MCA. Abuse and neglect is defined under § 41-3-102(7)(a), MCA:

> "Child abuse or neglect" means:
> (i) actual physical or psychological harm to a child;
> (ii) substantial risk of physical or psychological harm to a child; or
> (iii) abandonment.
> (b)(i) The term includes:
> (A) actual physical or psychological harm to a child or substantial risk of physical or psychological harm to a child by the acts or omissions of a person responsible for the child's welfare . . . .

¶22 We conclude the record contains sufficient credible evidence to support the District Court's findings that A.R. and I.R. were abused and neglected and thus are youths in need of care. Jesson testified that both A.R. and I.R. told her that Julie smacks them, and that she sometimes calls them assholes and idiots. Additionally, I.R. told Jesson that he was tired and did not get much sleep because both he and his brother sleep in the same bed as their mother. Julie admitted to Jesson that the boys slept in the same bed as she. Further, Jesson testified that on one occasion, she observed one of the boys wearing a gender-inappropriate night shirt in spite of the fact that she had counseled Julie on gender issues such as providing

7

the boys with gender appropriate toys. Jesson also testified that Julie's behavior while working with the Department ranged from cooperative to lashing out over minor issues.

¶23 Contrary to the inadmissible hearsay relied on by the District Court in *B.S.*, 252 Mont. at 436, 829 P.2d at 940, the opinions of Dr. Tranel, as an expert witness, are not objectionable simply because they are based in part on hearsay, so long as the facts and data relied on by Dr. Tranel were of the type typically relied on by experts in the field of psychology. Rule 703, M.R.Evid. Dr. Tranel testified that Julie's behavior had a negative impact on the boys' development, and it was his opinion that she should not have further parenting responsibility for them. This Court has previously relied on a psychologist's opinion and conclusions derived from interviews and tests as substantial evidence supporting termination of parental rights. *In re K.C.H.*, 2003 MT 125, ¶ 21, 316 Mont. 13, ¶ 21, 68 P.3d 788, ¶ 21. Accordingly, the District Court did not err in relying on Dr. Tranel's testimony, even though it was based in part on hearsay.

¶24 Finally, the holding in the truly singular case, *J.L.,* is not controlling here. *J.L.* was decided under the 1997 child abuse and neglect statutes, which have since been substantially amended. Additionally, the facts are distinguishable. Under the 1997 statutes, emotional abuse could not be proved without evidence of "an identifiable and substantial impairment of a child's physical, mental, or emotional ability to function." Section 41-3-102(8), MCA (1997); *J.L.*, ¶ 22. Accordingly, we held where no one, including the Department's own psychologist, or the District Court could determine whether the father caused the children's emotional injuries, or if the children suffered emotional injury from living with their mentally ill mother prior to her death, we affirmed the District Court's conclusion that there

was insufficient proof that the father caused substantial impairment to the children's emotional ability to function, and the children were not youths in need of care. *J.L.*, ¶¶ 23-29.

¶25 Under the current version of the statute, psychological (emotional) abuse may be proved by evidence of "acts or omissions that are injurious to the child's emotional, intellectual, or psychological capacity to function . . . ." Section 41-3-102(19)(a), MCA. We conclude sufficient evidence was presented in this case through the testimony of Stacey Jesson and Dr. Tranel to prove that Julie's actions were injurious to A.R. and I.R.'s capacity to function emotionally or psychologically. The District Court did not err in making this determination under § 41-3-102(7)(a) and (19)(a), MCA.

¶26 Section 41-3-437(7)(i), MCA, requires a district court to make written findings on which allegations of the petition have been proved. In its March 12, 2003, Order the District Court incorporated a specific finding that the following allegations had been proved:

> [T]he birth mother has psychologically abused and/or neglected the youths through regular spankings or hitting, verbal and mental abuse, failing to provide adequate sustenance, failing to care for the youths when one is ill, and failure to provide adequate housing by failing to provide the youths a bed to sleep in apart from the mother.

We conclude that this finding is sufficient to meet the requirements of § 41-3-437(7)(a)(i), MCA.

## ISSUE TWO

¶27 **Did the District Court exercise independent judgment when it adopted the Department's amended findings of fact and conclusions of law?**

¶28 Julie argues the District Court failed to exercise its independent fact finding judgment

9

by adopting the Department's proposed findings without substantial change.

¶29     While not error per se, this Court has stated district courts should not adopt verbatim the findings of fact and conclusions of law of the prevailing party. *Marriage of Nikolaisen*, 257 Mont at 5, 847 P.2d at 289. The reason is that "error occurs when the court accepts one party's proposed findings of fact without proper consideration of the facts and where there is a lack of independent judgment by the court." *In re Marriage of Kukes* (1993), 258 Mont. 324, 328, 852 P.2d 655, 657.

¶30     Based on our review of the record, we find the District Court did not fail to exercise independent judgment, nor did it adopt the Department's findings verbatim. The District Court's findings of March 12, 2003, differ substantially from those originally proposed by the Department on February 12, 2002. For example, as originally proposed, District Court Finding No. 8 merely contained a statement that the District Court found Stacey Jesson's testimony credible that the boys had been abused and neglected and that the boys were properly removed from Julie's home. In the March 12, 2003, Order, the District Court substantially expanded this finding to include evidence presented by Julie that the boys were in good health and were performing well at school. The District Court further exercised its independent judgment by making numerous other changes to the Department's findings as originally proposed, including deleting the Department's proposed findings in reference to a deposition taken of one of Julie's adult children, which the District Court did not consider in making its determination.

¶31     While it is true that in response to this Court's December 27, 2002, Order, the District Court merely added Finding No. 22, which included a statement as to which allegations of

10

the Department's petition had been proved, and added a clause to Conclusion of Law "E" that the boys were abused and neglected, that is sufficient to satisfy our Order. As we concluded in Issue 1, these findings are supported by substantial credible evidence. We do not conclude the District Court's findings are insufficient.

## IV. CONCLUSION

¶32 We affirm the District Court and hold it did not err in concluding A.R. and I.R. are youths in need of care. We further hold the District Court did not fail to exercise its independent judgment in reaching this conclusion.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER